## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Southern Division

|  |  |
|---|---|
| RICHARD A. LACEK, | * |
| Plaintiff, | * |
| v. | * |
| | * |
| CAROLYN W. COLVIN, | * |
| Acting Commissioner, | * |
| Social Security Administration, | * |
| Defendant. | * |

Civil Action No.: CBD-13-2046

\*\*\*\*\*\*

## <u>MEMORANDUM OPINION</u>

Richard A. Lacek ("Plaintiff") brought this action under 42 U.S.C. § 405(g) for judicial

review of the final decision of the Commissioner of the Social Security Administration

("Commissioner") denying Plaintiff's claims for a period of Disability Insurance Benefits

("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–433 (2012), and

Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381–1383

(2012).  Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion")

(ECF No. 11) and Defendant's Motion for Summary Judgment ("Defendant's Motion") (ECF

No. 13).  The Court has reviewed the motions, related memoranda, and applicable law.  No

hearing is deemed necessary.  *See* Local Rule 105.6 (D. Md.).  For the reasons presented below,

the Court hereby DENIES Plaintiff's Motion, DENIES Defendant's Motion, and REMANDS

this matter to the Social Security Administration for further proceedings consistent with this

opinion.

## I.   Procedural Background

Plaintiff filed his application for DIB and SSI on May 18, 2010 alleging disability

commencing August 1, 1997, due to obesity, status post right shoulder dislocation with persistent

pain, myofascial pain syndrome, lumbar degenerative disc disease, history of seizures, cognitive

disorder, and anxiety disorder.  R. at 28, 75, 77–78, 134, 166.  The Commissioner denied

Plaintiff's claim on first review on September 24, 2010 and upon reconsideration on April 7,

2011.  R. at 77–83.  Plaintiff appeared and testified at a hearing held on March 5, 2012 before an

Administrative Law Judge ("ALJ") where he amended the alleged onset date of disability to

September 1, 2007.  R. at 25, 44–74, 93–94.  On April 20, 2012, the ALJ issued a written

decision denying Plaintiff's applications for benefits.  R. at 25–38.  On April 27, 2012, Plaintiff

requested review of the ALJ's decision by the Appeals Council.  R. at 18–19, 20–21.  The

Appeals Council denied Plaintiff's request on May 18, 2013, making the ALJ's decision final

and appealable.  R. at 1–4.

## II.   Standard of Review

On appeal, the Court has the power to affirm, modify, or reverse the decision of the ALJ

"with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g) (2012).  The Court

must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the

correct law.  42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any

fact, if supported by substantial evidence, shall be conclusive."); s*ee also Russell v.*

*Commissioner of Soc. Sec*., 440 F. App'x 163, 164 (4th Cir. 2011); *Hays v. Sullivan*, 907 F.2d

1453, 1456 (4th Cir. 1990); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986).  Substantial

evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401

(1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal quotation marks omitted); *see also Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented below *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence."  *Hays*, 907 F.2d at 1456; *Schweiker*, 795 F.2d at 345.  The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts.  *Hays*, 907 F.2d at 1456.  If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court.  *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The Court shall find a person legally disabled if he is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.1505(a), 416.905(a) (2013).  The Code of Federal Regulations outlines a sequential, five-step process that the Commissioner must follow to determine if a plaintiff meets this definition:

Step 1)   Determine whether the plaintiff is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If he is doing such activity, he is not disabled.  If he is not doing such activity, proceed to step two.

Step 2)   Determine whether the plaintiff has a "severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement."  20 C.F.R. §§ 404.1520(a)(4)(ii),

416.920(a)(4)(ii).  If he does not have such impairment or combination of impairments, he is not disabled.  If he does meet these requirements, proceed to step three.

Step 3)   Determine whether the plaintiff has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement."  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If he does have such impairment, he is disabled.  If he does not, proceed to step four.

Step 4)   Determine whether the plaintiff retains the "residual functional capacity" to perform "past relevant work."  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If he can perform such work, he is not disabled.  If he cannot, proceed to step five.

Step 5)   Determine whether the plaintiff can perform other work, considering his residual functional capacity, age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If he can perform other work, he is not disabled.  If he cannot, he is disabled.

Plaintiff has the burden to prove that he is disabled at steps one through four, and Defendant has the burden to prove that Plaintiff is not disabled at step five.  *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

## III.   Analysis

In the ALJ's decision, he evaluated Plaintiff's claims using the five-step sequential process set forth in 20 C.F.R. § 404.1520.  R. at 26–38.  At the first step, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 1, 2007, the amended alleged onset date.  R. at 27.  At the second step, the ALJ determined that Plaintiff suffered from severe impairments as a result of obesity, status post right shoulder dislocation with persistent pain, myofascial pain syndrome, lumbar degenerative disc disease, history of seizures, cognitive disorder, and anxiety disorder.  R. at 28.  At the third step, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments."  R. at 28–31.  Before proceeding to step four of the sequential evaluation, the ALJ determined that Plaintiff retained the residual functional capacity

4

("RFC") to perform close to a full range of unskilled light work and a full range of unskilled

sedentary work, except that

> [H]e can never crawl or climb ladders, ropes, and scaffolds; he can occasionally
> balance, bend, stoop, kneel, crouch, squat, and climb ramps and stairs.  He is
> limited to pushing/pulling with the dominant (right) upper extremity requiring no
> more than 10 pounds of force, and he can no more than occasionally reach
> overhead with his right arm; and he must avoid concentrated exposure to hazards,
> such as moving machinery and heights.  Due to a combination of pain, the effects
> of medication, and mental impairments, the claimant is limited in the ability to
> understand, remember, and carry out detailed instructions, maintain concentration
> and attention for extended periods, perform activities within a schedule, maintain
> attendance, and be punctual within customary tolerances, work in coordination
> with or proximity with others without being distracted by them, complete a
> normal workday and workweek without interruptions from psychologically-based
> symptoms and perform at consistent pace without an unreasonable number and
> length of rest periods, and respond appropriately to changes in a work-setting, but
> resulting in at least 85 percent productivity.

R. at 31–36.  At step four, the ALJ compared the physical and mental demands of Plaintiff's past

relevant work as an auto and bus mechanic with his assessed RFC, and found that Plaintiff was

not capable of performing his past relevant work.  R. at 36.  At step five, the ALJ compared

Plaintiff's RFC, age, education, and work experience to the demands required of other work in

the national economy, and found that Plaintiff was capable of successfully adjusting to other

work such as a pre-assembler of printed circuit boards, small products assembler, taper of printed

circuit boards, and final assembler/benchwork.  R. at 37–38.  The ALJ concluded that Plaintiff

"has not been under a disability, as defined in the Social Security Act," during the claim period

from the alleged onset date of September 1, 2007 through the date of the decision.  R. at 38.

On appeal, Plaintiff argues that the Court should reverse the Commissioner's decision or

remand the case for additional consideration and evaluation of Plaintiff's conditions.  Pl. Mot. 1.

Plaintiff alleges the ALJ (1) improperly found that Plaintiff neither met nor equaled Listing

12.02; (2) based his decision on an improper hypothetical question to the vocational expert

("VE"); (3) failed to account for the severity of Plaintiff's mental limitations; (4) failed to

indicate weight of opinion evidence; and (5) improperly assessed Plaintiff's credibility.  *Id.* at 3–

16.  For the reasons set forth below, both Plaintiff's Motion and Defendant's Motion are denied

and the matter is remanded for further proceedings consistent with this opinion.

> **A.  The ALJ Properly Concluded that Plaintiff Does Not Meet the Requirements for Organic Mental Disorders**

At step three of the sequential evaluation process, the ALJ found that Plaintiff did not

have "an impairment or combination of impairments that met or medically equaled the severity

of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1."  R. at 28–31.

Plaintiff asserts that the ALJ failed to consider medical evidence that would qualify under Listing

12.02 for organic mental disorders.  Pl. Mot. 11–12.  This alleged impairment is the result of a

motorcycle accident in 1997 from which Plaintiff suffered a brain injury in addition to physical

and psychological symptoms.  R. at 32, 420–40.

A claimant bears the burden of demonstrating that his impairment meets or equals an

impairment listed in the regulations.  *Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir. 1986).

Under Listing 12.02, Plaintiff must prove the following criteria:

> *Organic Mental Disorders*: Psychological or behaviorial abnormalities associated with a dysfunction of the brain. History and physical examination or laboratory tests demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> A.  Demonstration of a loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one of the following:
>
>> 1.  Disorientation to time and place; or
>> 2.  Memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past); or

3. Perceptual or thinking disturbances (e.g., hallucinations, delusions); or
4. Change in personality; or
5. Disturbance in mood; or
6. Emotional lability (e.g., explosive temper outbursts, sudden crying, etc.) and impairment in impulse control; or
7. Loss of measured intellectual ability of at least 15 I.Q. points from premorbid levels or overall impairment index clearly within the severely impaired range on neuropsychological testing, e.g., the Luria-Nebraska, Halstead-Reitan, etc.;

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02.  "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."

*Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

The ALJ concluded that the evidence of record was insufficient to establish the Listing 12.02 criteria in either subparts B and C, one of which Plaintiff must prove to qualify under Listing 12.02 for organic mental disorders.  R. at 29–30.  With respect to subpart B criteria, the

ALJ explained that Plaintiff's testimony established he had no more than a mild restriction in activities of daily living and moderate difficulties in terms of social functioning and concentration, persistence, or pace.  R. at 29–30.  After reviewing the medical evidence of record, Dr. L. Payne and Dr. D. Walcutt concluded similarly, although Dr. Walcutt noted Plaintiff's difficulties in social functioning were only mild.  R. at 358, 451.  In addition, there is no evidence to suggest that Plaintiff had repeated episodes of decompensation of extended duration.  *See* R. at 358, 451.  With respect to subpart C criteria, the ALJ observed that Plaintiff worked for nearly a decade following the alleged traumatic brain injury without suffering either repeated episodes of decompensation, decompensation resulting from an increase in mental demands or change in his environment, or an inability to function outside a highly supportive living arrangement.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02C.  Plaintiff testified that he lived with his parents and that his mother cooked for him, but he also testified that he was able to prepare simple meals, manage his own finances, visit and socialize with friends, drive, do chores, and attend to his personal care.  R. at 50, 66, 200–03, 223–26, 500, 504, 508, 512.

Plaintiff asserts that he met Listing 12.02, but fails to demonstrate how the evidence supports his belief.  *See* Pl. Mot. 11–12.  Plaintiff merely mentions clinical observations included in the reports submitted by Dr. Kim Jones-Fearing and Dr. Nicole Stern, which describe some difficulties with memory, concentration, and cognition.  Pl. Mot. 12.  However, these reports do not establish that Plaintiff's difficulties in these areas were "marked" or that he suffered from "repeated episodes of decompensation" of extended duration.  Additionally, while Dr. Stern reported that Plaintiff was unable to live independently, R. at 437, his reference is the only indication of that inability in the record and is inconsistent with Plaintiff's own self-reports, *see* R. at 200–04, 223–26.  For instance, Plaintiff writes in his function report that he manages to

regularly take his medication, feed himself and the household pets, complete yard work, drive a car, make online purchases, shop for groceries, handle personal finances, and play guitar and draw. *Id.* Plaintiff has failed to meet his burden of demonstrating that his impairment satisfies the requirements of all of the specified medical criteria in Listing 12.02. *See Sullivan*, 493 U.S. at 530; *Kellough*, 785 F.2d at 1152.

**B. The ALJ Failed to Properly Indicate the Weight Applied to Opinion Evidence of Record**

Plaintiff asserts that the ALJ was unclear regarding the weight he attributed to the medical opinions of record in his RFC assessment, thus failing to perform the required "function-by-function" analysis in relation to Plaintiff's physical work capacity.[1] Pl. Mot. 10–11; *see also* SSR 96-8p, 1996 WL 374184, at *3. Plaintiff takes particular issue with the ALJ's treatment of the consultative psychiatric examinations conducted by Dr. Kim B. Jones-Fearing and Dr. Nicole M. Stern.[2] *See* Pl. Mot. 10–11. Such action would indicate that the ALJ had failed to sufficiently explain how he resolved inconsistencies in the medical opinion evidence; failed to sufficiently explain why any individual opinion was not adopted; and failed to sufficiently consider the six factors listed in 20 C.F.R. §§ 404.1527(c), 416.927(c) regarding the amount of weight to give a medical opinion.

---

[1] Plaintiff submits two different arguments to the Court: (1) the ALJ failed to indicate the weight assigned to opinion evidence of record as to his mental RFC assessment, Pl. Mot. 10–11; and (2) the ALJ failed to provide a function-by-function analysis as to his physical RFC assessment, Pl. Mot. 15. An ALJ does not assign a separate physical and mental RFC, and the Court shall not analyze the two separately. Additionally, the requirement to indicate the weight assigned to opinion evidence is a subpart of the requirement to conduct a function-by-function analysis. Where, as here, the Court finds that a subpart is deficient, no additional analysis is required for remand—despite Plaintiff's lack of explanation regarding the function-by-function contention.

[2] Plaintiff's only reference to evidence in the record to support this argument is in the introductory paragraph, where Plaintiff states that "[f]or facts and reasons set forth in the preceding argument, the ALJ did not consider all the medical evidence and make specific findings." Pl. Mot. 10. The only opinions mentioned in Plaintiff's earlier argument, or anywhere in the Motion, are those of Dr. Jones-Fearing and Dr. Stern. *See* Pl. Mot. 5–6, 11–12.

The Fourth Circuit requires "explicit indications as to the weight given to all the evidence." *Sanderlin v. Barnhart*, 119 F. App'x 527, 528 (4th Cir. 2005) (citing *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir.1984)).  The Social Security Rulings themselves require the ALJ to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."  SSR 96-8p, 1996 WL 374184, at *7.  The duty of explanation in weighing medical opinion evidence is especially important where there are conflicting physician opinions, thus the ALJ "must indicate explicitly that such evidence has been weighed and its weight." *Arnold v. Sec'y of Health, Ed. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977); *see also Murphy v. Bowen*, 810 F.2d 433, 437 (4th Cir. 1987) (remanding where opinion contained no indication of why ALJ credited one doctor's opinion over another).

To determine the weight assigned to medical opinions, the Commissioner considers six factors: (1) the examining relationship between the source and the claimant; (2) the length, nature, and extent of the treatment relationship between the source and the claimant; (3) the supportability of the source's opinions; (4) the consistency of the source's opinions with the record as a whole; (5) any specialized expertise of the source; and (6) other factors which the claimant may bring to the Commissioner's attention.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  The regulations state a preference for medical sources who have a treatment relationship with the claimant, because they are "most able to provide a detailed, longitudinal picture" and "may bring a unique perspective to the medical evidence."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  When the adjudicator does not give controlling weight to a treating source, that decision must be justified in the notice of decision by an application of the factors listed above.  *Id.*  For medical sources who have not examined or treated the claimant, the

adjudicator must assign weight depending on the degree to which they provide supporting explanations for their opinions.  20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).

There is a glaring lack of substance and weighing of the opinion evidence in the ALJ's RFC evaluation.  The ALJ summarized all of the medical evidence of record with little commentary or explanation as to how he interpreted it or what weight he was assigning to the various medical opinions.  R. at 31–36.  The ALJ noted the assigned weight for only three of the seventeen opinions of record—Drs. J. Biddison, S.K. Najar, and Barry Hecht—and for those three opinions he merely stated that he gave them "some" or "very minimal" weight.  R. at 36. The reader is left to guess how the ALJ analyzed or disposed of the remaining fourteen opinions in evidence.

This lack of explanation leaves the Court without an adequate understanding of how the ALJ reached essential decisions.  For instance, Dr. Jones-Fearing reported that Plaintiff had "notable speech aprosody, blunted affect and notable apathy;" that "it is not clear if [Plaintiff] will be able to manage his own funds;" and that Plaintiff's ability to understand and follow simple instructions independently was impaired.  R. at 422, 424, 429.  Dr. Stern noted that Plaintiff was "quite limited cognitively across all tested areas," "seemed to have difficulty accessing previously stored information as well as articulating what he was able to access," and would be unable to live independently or manage his own finances.  R. at 434–35, 437.  If the ALJ were to give greater weight to these medical opinions, his determination that Plaintiff retains an RFC to perform a full range of unskilled light and sedentary work would not be viable, even with the aforementioned limitations.  R. at 31.

Defendant argues that the ALJ "was obliged to, and did, consider the evidence, but [that] the opinions [of Dr. Jones-Fearing and Dr. Stern] were due no particular weight" because they

were the result of consultative examinations.  R. at 16.  Defendant boldly asserts that only the opinions of treating sources are entitled to due consideration and an assigned weight in the ALJ's calculus.  *See id.*  Fourth Circuit jurisprudence, however, is clear that the ALJ must explicitly state the weight he accords each opinion.  *See Sanderlin*, 119 F. App'x at 528.  The ALJ does not assign any opinion controlling weight; he does not indicate which opinions he adopted, let alone explain why; and he does not explain how he resolved the inconsistencies that he spotlights.

Although "administrative verbosity" is not required, the ALJs must conduct analysis and an explanation that allows a reviewing Court to understand the conclusions he reached and why he reached them.  *See Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999).  Much of the ALJ's RFC assessment was devoted to summary and not enough to analysis.  It would be an "abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational" to affirm an ALJ's opinion that does not explicitly indicate the weight given to the medical evidence and what conclusions are drawn therefrom.  *Gordon*, 725 F.2d at 236 (internal quotation marks omitted).  Therefore, the Court will remand this case for a more adequate analysis and explanation.

## C.  ALJ Properly Weighed Plaintiff's Activities of Daily Living in Assessing His Credibility

Plaintiff asserts that the ALJ erred in assessing his credibility, contending that the ALJ "gave undue weight" to Plaintiff's activities of daily living, in particular the fact that Plaintiff had taken the subway to the hearing and that he had assisted his father in the past.  Pl. Mot. 13.  A claimant's subjective complaints are relevant to the assessment of his RFC and the regulations require ALJs to follow a two-step process in their evaluation: (1) determining whether the claimant has medically determinable physical or mental impairments that could reasonably be expected to produce the symptoms alleged, and if so (2) determining the extent to which the

claimant is accurately portraying his complaints.  20 C.F.R. §§ 404.1529, 416.929; *Craig*, 76

F.3d at 594; SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996).  A subjective complaint "need

not be accepted to the extent [it is] inconsistent with the available evidence, including objective

evidence of the underlying impairment." *Craig*, 76 F.3d at 595.

      The Court must be careful not to intrude on the ALJ's role as the fact finder who weighs

all of the evidence and evaluates the claimant's allegations.  An ALJ's credibility findings are

entitled to substantial deference and the Court is not to re-weigh conflicting evidence. *Craig*, 76

F.3d at 589; *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).  The Court should not hamper

the ALJ's consideration of the individual pieces of evidence, even if taken in isolation they

would be insufficient to support the ALJ's conclusion. *See, e.g.*, *Valley v. Astrue*, No. 3:11-CV-

260-HEH, 2012 WL 3257861, at *15 (E.D. Va. June 22, 2012) (finding that a plaintiff's ability

to perform simple household chores, drive, and take care of her grandchildren, when combined

with positive response to medication and ability to ambulate, were sufficient to discount her

claim of disability).

      Here, the ALJ followed the two-step process for assessing Plaintiff's subjective

complaints.  First, the ALJ found that Plaintiff's medically determinable impairments could

reasonably be expected to cause the symptoms he alleged.  R. at 32.  Then, the ALJ assessed

Plaintiff's statements concerning the intensity, persistence, and limiting effect of those symptoms

and found them to be less than fully credible in light of the medical evidence of record. *Id.*  For

instance, the ALJ determined that the record undermined Plaintiff's statements regarding his

activities of daily living and claims of panic attacks in public places, such as building model

helicopters, taking the subway to the hearing, visiting friends for socialization, and helping to

care for his wheelchair-bound father.  R. at 29, 35, 51, 66, 204, 251, 406, 541.  Moreover, the

ALJ identified inconsistencies between Plaintiff's testimony that he was incapable of doing household chores and treatment notes from the Pain Management Specialists indicating he previously reported the opposite.  R. at 34, 65, 500, 504, 508, 512.

The ALJ also found dispositive that Plaintiff had received routine and conservative treatment for his conditions and that he failed to follow up on recommendations made by his doctors.  R. at 35.  For example, in July 2009 Plaintiff declined to follow Dr. Craig Miller's recommendation that he undergo arthroscopic surgery, R. at 651–52; in November 2010 Plaintiff declined to participate in physical therapy for his back pain or to undergo a neurological evaluation for his headaches, R. at 405; and in January 2012 Plaintiff reported that he was not diligent about exercising to alleviate his condition, R. at 500.  While the Court may not agree with every inference drawn by the ALJ, the analysis of Plaintiff's activities of daily living is supported by substantial evidence and the Court shall not endeavor to re-weigh the evidence.

### D.  Hypothetical Questions the ALJ Posed to VE Were Proper, Even Though They Did Not List All Plaintiff's Limitations

At step five of the sequential analysis, the ALJ must determine whether a claimant, despite his work-related limitations, can perform other work that exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(g), 416.920(g).  In making this determination, an ALJ may rely on the expertise of a vocational expert.  20 C.F.R. §§ 404.1566(e), 416.966(e).  Plaintiff challenges the ALJ's conclusion that he could perform work existing in the national economy by arguing that the hypothetical questions posed to the VE were flawed.  R. at 3–10.  Plaintiff asserts that "[e]ach and every symptom must be included in a question to the VE, who must analyze and discuss the specific effects of each symptom," and Plaintiff takes particular issue with the ALJ's treatment of the consultative reports submitted by Dr. Kim Jones-Fearing and Dr. Nicole Stern.  Pl. Mot. 5–6.

14

The Commissioner employs VEs to offer evidence as to whether a claimant possesses the RFC to meet the demands of past relevant work or to adjust to other existing work. 20 C.F.R. §§ 404.1560(b)–(c), 416.960(b)–(c). "In order for a [VE]'s opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of [a] claimant's impairments." *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) (quoting *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)). The ALJ is not obliged to list all the claimant's medical impairments in the hypothetical question to the VE, as long as the hypothetical question adequately reflects the limitations caused by those impairments. *See Fisher v. Barnhart*, 181 F. App'x 359, 365 (4th Cir. 2006); *Brown v. Astrue*, No. CBD 10-1238, 2013 WL 937549, at *6 (D. Md. Mar. 8, 2013).

The ALJ "has great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." *Koonce v. Apfel*, No. 98–1144, 1999 WL 7864, at *5 (4th Cir. Jan.11, 1999); *see also France v. Apfel*, 87 F. Supp. 2d 484, 490 (D. Md. 2000) (affording ALJs substantial leeway in the formulation of hypothetical questions). When formulating the hypothetical question, the ALJ identifies the "physical and mental limitations imposed by the claimant's medical impairment(s)." 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2); *see also Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003). It is the ALJ's role to translate the claimant's medical impairments into functional limitations from which the VE can determine whether work is available. *See Fisher*, 181 F. App'x at 364; *see also Smith v. Sullivan*, 733 F. Supp. 450, 452 (D.D.C. 1990) ("[A]s a practical matter, a recitation of the claimant's various physical impairments is not going to be nearly as useful to the VE as the ALJ's specific finding of what are the claimant's actual disabling limitations arising from the physical impairments."). A hypothetical question is

"unimpeachable if it adequately reflects a [RFC] for which the ALJ had sufficient evidence." *Fisher*, 181 F. App'x at 364 (citing *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005)) (internal quotation marks omitted).

In his hypothetical questions to the VE, the ALJ specified that Plaintiff's ability to work was limited by the effects of pain, medication, and cognitive and emotional factors.  R. at 71. The ALJ also described in detail his conclusions regarding Plaintiff's mental limitations, which were ultimately included in his RFC formulation.  *See supra* Part III.A.  The ALJ explained that Plaintiff's limitations would combine to limit productivity, but that the combined effect of his limitations would allow productivity for at least eighty-five percent of the workday.  *Id.*  The vocational expert indicated that she understood the ALJ's question and testified in response that: (1) an individual limited in his productivity for as much as fifteen percent of the working day, would not suffer a diminished capacity to perform work; but (2) an individual limited in his productivity to more than fifteen percent of the working day, would preclude employment.  R. at 72.

The ALJ was not required to list verbatim the findings of Dr. Jones-Fearing and Dr. Stern.  A list of clinical diagnoses would be of little value to the VE, whose role is to testify as to the mental and physical demands of different types of work, not to render an opinion on how Plaintiff's ailments might be reflected in his capabilities.  *See Fisher*, 181 F. App'x at 365.  The ALJ's questions and the manner in which he posed the questions to the VE were proper.  The Court will not remand merely because the hypothetical question did not specifically list each of Plaintiff's impairments and limitations.

The ALJ appropriately provided detailed hypothetical questions based on his assessment of Plaintiff's RFC.  Substantial evidence supports the ALJ's determination, and the Court finds no error with the ALJ's posing of hypothetical questions to the VE.

### E.  ALJ Properly Applied the Psychiatric Review Technique to Determine the Severity of Plaintiff's Mental Limitations

Plaintiff asserts that the ALJ failed to inform the VE of the severity of Plaintiff's mental limitations at step five of the sequential analysis, which the regulations require an ALJ to determine through use of the psychiatric review technique.  Plaintiff faults the ALJ for specifying, based on his incorrect mental impairment determination, that the combination of Plaintiff's limitations might limit him for as much as fifteen percent of the working day.  Pl. Mot. 3–5.

When evaluating a mental impairment, the ALJ is required to follow the psychiatric review technique described in 20 C.F.R. § 404.1520a and § 416.920a.  *See* 20 C.F.R. §§ 404.1520a, 416.920a.  First, the ALJ evaluates the pertinent signs, symptoms, and laboratory findings to determine whether the claimant has a medically determinable mental impairment.  20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).  Second, the ALJ determines the degree of functional limitation by rating the claimant in four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c), 416.920a(c); *see also* Social Sec. Admin., U.S. Dep't of Health & Human Servs., SSA Pub. No. 64-039, Disability Evaluation Under Social Security § 12.00C (2013) (hereinafter "Disability Evaluation") (listing the broad functional areas for assessment of severity of medically determinable mental impairments).  Third, the ALJ determines the severity of the impairment and whether it meets or equals a listing by comparing the medical evidence and the degree of functional limitation to the criteria for the appropriate mental disorder.  20

C.F.R. §§ 404.1520a(d)(1)–(2), 416.920a(d)(1)–(2). Finally, if the claimant has a severe mental disorder that does not meet or equal a listing, the ALJ must determine the mental RFC of the claimant. 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3).

The psychiatric review technique requires the ALJ to assess an individual's limitations and restrictions within the aforementioned four broad functional areas. SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996) (citing Disability Evaluation, *supra*, § 12.00C). At steps two and three of the sequential evaluation process, the ALJ must reference the four broad functional areas to rate the severity of the claimant's mental impairment(s). *Id.* The analysis of the four broad functional areas at steps two and three, however, does not require the same depth as that required for the mental RFC assessment used at steps four and five of the sequential evaluation process. *Id.* The mental RFC assessment requires a more detailed evaluation "by itemizing claimant's functions" within the four broad functional areas. *Id.*

The ALJ must document application of the technique by incorporating pertinent findings and conclusions into his opinion. 20 C.F.R. §§ 404.1520a(e), 416.920a(e). The opinion must "show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment." 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4). The ALJ must express the claimant's capacity in terms of work-related functions, such as the ability to understand, carry out, and remember instructions; use judgment in work-related decisions, respond appropriately to supervision, and deal with changes in a work setting. SSR 96-8p, 1996 WL 374184, at *6. The ALJ's function-by-function analysis will be deemed adequate if it includes a narrative discussion thoroughly explaining how the functional limitations in the four broad categories are supported by the medical and non-medical evidence. *Kozel v. Astrue*, No. JKS 10-2180, 2012 WL

2951554, at *3-4 (D. Md. July 18, 2012) (citing *Felton-Miller v. Astrue*, 459 F. App'x 226, 231

(4th Cir. 2011); *Thomason v. Astrue*, No. TMD 08-3403, 2012 WL 707003, at *2 (D. Md. Mar.

2, 2012); *Davis v. Astrue*, No. JKS 09-2545, 2010 WL 5237850, at *5 (D. Md. Dec. 16, 2010).

Here, the ALJ's application of the psychiatric review technique was exceptionally

thorough.  At steps two and three of the sequential analysis, the ALJ described Plaintiff's self-

reported activities of daily living and reviewed treating physician reports from April 2007

through September 2009.  R. at 28–31.  The ALJ then rated Plaintiff in the four broad functional

areas, finding that he had mild restriction in activities of daily living, mild difficulties in social

functioning, moderate difficulties in concentration, and one to two episodes of decompensation

of extended duration.  R. at 29–30.  Based on these findings, the ALJ properly concluded

Plaintiff did not meet a listing for mental disorders.

The ALJ recognized that the regulations require a "more detailed assessment" of the four

broad functional areas when evaluating a claimant's mental RFC assessment used at steps four

and five of the sequential analysis, R. at 30–31, and dedicated six pages to adequately explaining

his conclusions at those stages in the sequential analysis.  R. at 31–36.  The ALJ ultimately

included mental limitations in his RFC formulation, indicating Plaintiff was

> [L]imited in his ability to understand, remember, and carry out detailed
> instructions, maintain concentration and attention for extended periods, perform
> activities within a schedule, maintain attendance, and be punctual within
> customary tolerances, work in coordination with or proximity with others without
> being distracted by them, complete a normal workday and workweek without
> interruptions from psychologically-based symptoms and perform at consistent
> pace without an unreasonable number and length of rest periods, and respond
> appropriately to changes in a work-setting.

R. at 31.  The ALJ recognized that these limitations would combine to limit productivity, but

determined that the combined effect of the limitations would allow productivity for at least

eighty-five percent of the workday.  *Id.*  The ALJ described how he reached his conclusions,

citing medical evidence of Plaintiff's mental health impairments and testimony of Plaintiff's activities of daily living.  R. at 34–36.

The ALJ clearly applied the psychiatric review technique and adequately explained how the functional limitations in the four broad categories are supported by the medical and non-medical evidence.  It is not for the Court to re-weigh the evidence.  *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (emphasizing that an ALJ's credibility findings are entitled to substantial deference and that the Court should not re-weigh conflicting evidence), *superseded by statute on other grounds*, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).  Furthermore, there was nothing inherently improper with the ALJ's use of a percentage instead of a term such as "mild" or "moderate" to describe the degree of limitation Plaintiff's impairments impose on his productivity.  *See Jones v. Bowen*, 817 F.2d 102 (4th Cir. 1987) (finding no fault with testimony by a vocational expert regarding the employability of a claimant whose pain limited his productivity twenty percent of the time).  The ALJ did not err in his assessment of the severity of Plaintiff's mental limitations, and thus did not err in his hypothetical questions to the VE.

## IV.    Conclusion

Based on the foregoing, the Court DENIES Plaintiff's Motion and DENIES Defendant's Motion and REMANDS this matter to the Social Security Administration for further proceedings consistent with this opinion.

June 23, 2014                                              _____/s/_____
                                                           Charles B. Day
                                                           United States Magistrate Judge

CBD/slr